Marc C. Forsythe - State Bar No. 153854
Charity J. Manee – State Bar No. 286481
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Suite 210, Building D
Irvine, CA 92614
mforsythe@goeforlaw.com
cmanee@goeforlaw.com

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Attorneys for Alleged Debtor Stewart Homes Inc.
dba 5 Star Homes

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

In re:

STEWART HOMES INC., dba 5 STAR HOMES,

Alleged Debtor.

Case No. 8:23-bk-12060-TA

Chapter 7

**NOTICE OF MOTION AND MOTION TO DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. SECTION 303(J)(2); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MORRIS AARON ON BEHALF OF MCA FINANCIAL GROUP, INC., ATTACHED HERETO IN SUPPORT THEREOF**

**Hearing Date**

Date:     January 28, 2025
Time:    11:00 a.m.
Ctrm:    5B
Location: 411 West Fourth Street
              Santa Ana, CA 92701

1

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, TO THE OFFICE OF THE UNITED STATE TRUSTEE, COUNSEL FOR THE PETITIONING CREDITORS, CREDITORS, AND TO ALL PARTIES IN INTEREST:**

The alleged chapter 7 Debtor, Stewart Homes Inc., dba 5 Star Homes ("Alleged Debtor" or "SHI") and Mobile Direct LLC, Mobile Direct 2 LLC, and Capital (360) Inc. (collectively, the "Petitioning Creditors", and together with the Alleged Debtor, the "Parties"), have agreed to voluntary dismiss the pending involuntary bankruptcy petition pursuant to 11 U.S.C. Section 303(j)(2) subject to the current chief restructuring officer (MCA Financial Group, Ltd.)(hereinafter "MCA") agreeing to accept the Assignment for the Benefit of Creditors (pursuant to Title 11.7 of the California Code of Civil Procedure, Section 1800, et. al.) that SHI agrees to execute (upon a final order being entered by this Bankruptcy Court dismissing the Involuntary Petition) that includes a term requested by the Petitioning Creditors, which term is documented in Section 8 of the proposed General Assignment attached as **Exhibit "1"** to the attached Declaration of Morris Aaron and incorporated herein by this reference (the "Proposed General Assignment"). Section 8 of the Proposed General Assignment states as follows:

> "8.     <u>Quarterly Reporting by Assignee to All Creditors.</u>  The Assignee shall provide reporting on cash receipts and disbursements on a quarterly basis within 30 days from the end of each fiscal quarter.  The report will bullet point key activates of the Assignee but only to the extent it does not breach attorney client privilege or risk litigation strategy.

Dismissal of the pending involuntary bankruptcy case is in the best interest of all interested parties as the assignment for the benefit of creditors will allow for an orderly liquidation of SHI and potential recovery of assets by MCA, who has been in charge of SHI for over 16 months and is in the best position to perform such duties.  Litigating the legitimacy of the involuntary bankruptcy petition will cost SHI and the Petitioning Creditors a significant amount of legal fees and costs, which are not in the best interests of either.

**PLEASE TAKE FURTHER NOTICE** that your rights may be affected by this Motion. You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)

1    **PLEASE TAKE FURTHER NOTICE THAT** this Motion is based upon this Notice,
2    the Memorandum of Points and Authorities accompanying the Motion, the attached Morris
3    Aaron Declaration., the arguments of counsel, the record in this case, all other matters of which
4    this Court may take judicial notice, and other admissible evidence properly brought before the
5    Court in connection with this Motion.

6    **PLEASE TAKE FURTHER NOTICE THAT** this Motion is being filed and served
7    pursuant to Local Bankruptcy Rule 9013-1(o)(1).  Any response and request for a hearing must
8    be filed with the Court and served on the Trustee and the United States Trustee within 14 days
9    after the date of service of this Notice.   Failure to file a timely response to the Motion may be
10   deemed to be consent to the granting of the Motion.  *See* LBR 9013-1(h).

12   DATED:        January 8, 2025              Respectfully submitted,

13                                              **GOE FORSYTHE & HODGES LLP**

15                                              By:    */s/Marc C. Forsythe*
                                                       Marc C. Forsythe, Esq.
16                                                     Attorneys for Stewart Homes, Inc. dba
                                                       5 Star Homes

19   Dated: January 8, 2025                     WALL & SON

20                                              By: _____
21                                                     William L. Wall
                                                       Attorneys for Petitioning Creditors

3

**MEMORANDUM OF POINTS & AUTHORITIES**

I.  **INTRODUCTION AND BACKGROUND FACTS**

Following the unexpected death of Michael Stewart (the founder of SHI) on July 15, 2023, Amy Stewart, as Trustee of the Michael and Amy Stewart Family Trust dated December 6, 2000 (the "Trust"), vested with 100% ownership of SHI. Shortly thereafter, the Trust retained MCA Financial Group, Ltd.)(hereinafter "MCA") as the chief restructuring officer (the "CRO") through a written agreement dated August 16, 2023. As of the date of this Motion, MCA is still acting as the CRO for SHI. See ¶ 1 of the Declaration of Morris Aaron, attached hereto and incorporated herein by this reference (the "MA Dec.").

On October 7, 2023, the "Petitioning Creditors filed an involuntary petition ("Involuntary Petition") for chapter 7 bankruptcy relief against the Alleged Debtor, commencing the case entitled *In re Stewart Homes Inc.*, Case No. 8:23-bk-12060-TA (the "Bankruptcy Case").

Subsequently, the Alleged Debtor propounded discovery on the Petitioning Creditors, which discovery was never responded to. The Alleged Debtor and the Petitioning Creditors have entered into numerous stipulations to continued discovery deadlines, the date to file a motion to compel and the joint pre-trial conference.

During this bankruptcy case, the Parties, and others, were actively involved in United States District Court, Central District of California, entitled *Wells Fargo Bank, N. A., a national bank association, vs. Stewart Homes, Inc., a California corporation, dba 5 Star Homes; Capital (360), Inc., a California corporation; David M. Tofolo, an individual; Amy S. Stewart, trustee of the Stewart Trust; and Does 1-10, inclusive,* U.S.D.C. Case Number 8:23-cv-01800-DOC-ADS, before the Honorable Judge David O. Carter (the "WFB Lawsuit"). During that lawsuit, Judge David Carter appointed Judge Scott Clarkson to engage in settlement discussions in relation to this Involuntary Bankruptcy case and the WFB Lawsuit has settled and not this Involuntary Bankruptcy Case has settled.

The Parties seek to have this Court approve a dismissal of the Involuntary Bankruptcy case with a waiver of costs by all Parties if SHI and MCA agree to enter an Assignment for the Benefit of Creditors (pursuant to Title 11.7 of the California Code of Civil Procedure, Section 1800, et.

al.)(the "SHI ABC"), which would take effect once an order approving this Motion becomes final. See MA Dec., ¶ 2. A true and correct copy of the Proposed General Assignment between SHI and MCA agreement is attached as **Exhibit "1"** to the MA Dec. and incorporated herein by this reference. A key provision of the Proposed General Assignment requested by the Petitioning Creditors as a condition to consent to the dismissal of this involuntary bankruptcy case is documented in Section 8 of the Proposed General Assignment, which states as follows:

> "8.    Quarterly Reporting by Assignee to All Creditors. The Assignee shall provide reporting on cash receipts and disbursements on a quarterly basis within 30 days from the end of each fiscal quarter. The report will bullet point key activates of the Assignee but only to the extent it does not breach attorney client privilege or risk litigation strategy.

The Parties are also stipulating to a waiver of costs and entry of judgment, including, but not limited to, the costs and damages awardable under 11 U.S.C. 303(j).

## II.    ARGUMENT

Section 11 U.S.C. 303(j) states as follows:

**(j)** Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section—

**(1)** on the motion of a petitioner;

**(2)** on consent of all petitioners and the debtor; or

**(3)** for want of prosecution.

The Parties believe that dismissal of the Involuntary Bankruptcy Case on the condition that the SHI execute the Proposed General Assignment is in the best interests of all parties, provides for an orderly liquidation of SHI through an ABC, and avoids a costly evidentiary hearing on the whether SHI should be a debtor under the U.S.B.C.

## III.    CONCLUSION

Based on the arguments and evidence presented herein, the Alleged Debtor hereby requests that the Court approve the Motion to Dismiss.

/ / /

Dated: January 8, 2025

Respectfully submitted by:

**GOE FORSYTHE & HODGES LLP**

By: /s/Marc C. Forsythe
    Marc C. Forsythe
    Charity J. Manee
    Attorneys for Alleged Debtor Stewart
    Homes Inc., dba 5 Star Homes

Dated: January 8, 2025

WALL & SON

By: _____
    William J. Wall
    Attorneys for Petitioning Creditors

# DECLARATION OF MORRIS AARON

I, Morris Aaron, declare and state,

I make this declaration in support of the Motion (the "Motion") to Dismiss the Involuntary Petition filed against Stewart Homes, Inc ("SHI"). I am and for all relevant times noted herein the President of MCA Financial Group, Ltd ("MCA"). I have personal knowledge of the facts stated herein, and if called upon to testify, I could and would competently and truthfully testify thereto.

1. MCA was retained by SHI as of August 23, 2023, in the role of Chief Restructuring Officer (CRO) and has continued in that position to the present.

2. MCA has been informed that SHI intends to execute an Assignment for the Benefit of Creditors (pursuant to Title 11.7 of the California Code of Civil Procedure, Section 1800, et. al.).

3. MCA has been informed through SHI's counsel (Goe Forsythe & Hodges, LLP) that the petitioning creditors in the pending Involuntary Bankruptcy case filed against SHI are willing to consent with SHI to the dismissal of the Involuntary Petition if MCA agrees to accept the Assignment for the Benefit of Creditors (pursuant to Title 11.7 of the California Code of Civil Procedure, Section 1800, et. al.) that SHI agrees to execute as well (upon a final order being entered by this Bankruptcy Court dismissing the Involuntary Petition) that includes a term requested by the Petitioning Creditors, which term is documented in Section 8 of the proposed General Assignment attached hereto as **Exhibit "1"** and incorporated herein by this reference (the "Proposed General Assignment"). Section 8 of the Proposed General Assignment states as follows:

> "8. <u>Quarterly Reporting by Assignee to All Creditors.</u>  The Assignee shall provide reporting on cash receipts and disbursements on a quarterly basis within 30 days from the end of each fiscal quarter. The report will bullet point key activates of the Assignee but only to the extent it does not breach attorney client privilege or risk litigation strategy.

/ / /
/ / /

7

4. MCA hereby agrees to enter into the Proposed General Assignment (attached hereto as **Exhibit "1"**) with SHI upon the dismissal of the Involuntary Petition and such order becoming final.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 7th day of Januay 2025 at Phoenix, Arizona.

*Morris C. Aaron*

Morris Aaron, as President of
MCA Financial Group, Ltd.
Declarant

3

# EXHIBIT 1

# EXHIBIT 1

**GENERAL ASSIGNMENT**

This General Assignment ("Assignment") is made this 8th day of January, 2025, by and between Stewart Homes, Inc., a Delaware Limited Liability Corporation ("Assignor"), and MCA FinCo 4, LLC, an Arizona limited liability company ("Assignee"), with reference to the following:

**RECITALS**

A.    Assignor had as its principal place of business at 11810 Beach Boulevard, Stanton, CA, 90680, and its federal tax identification number is 33-0766476

B.    Assignor is indebted to various creditors and is unable to pay its debts in full, and believes that transferring its property to an assignee for the benefit of creditors is in the best interest of its creditors and stockholders.

C.    Assignee has its principal place of business in Phoenix, Arizona; and

D.    This General Assignment has been approved by the 100% owner of all of the interest in Assignor, Amy Stewart, as Trustee and on behalf of the Michael and Amy Stewart Family Trust dated December 6, 2020, and shall not be effective until accepted by Assignee.

**AGREEMENT**

NOW, THEREFORE, Assignor, for valuable consideration, receipt of which is hereby acknowledged, does hereby make the following general assignment for the benefit of Assignor's creditors to Assignee under the following terms and conditions, all of which terms and conditions are agreed to by Assignor and Assignee:

1.    <u>Assignment of Assets</u>.  Subject to <u>Sections 1.1</u> and <u>1.2</u>, Assignor does hereby grant, assign, bargain, sell and transfer to Assignee, its successors and assigns, in trust, for the benefit of all the Assignor's creditors generally, all of the property and assets of Assignor of every kind and nature wherever situated, whether in possession, reversion, remainder or expectancy, both real and personal, and any interest or equity therein not exempt from the enforcement of a money judgment, including, without limitation, all inventory, merchandise, goods, furniture, fixtures, machinery, equipment, raw materials, work in process, accounts, general intangibles, intellectual property, deposits, books, records, fixtures, cash on hand, bank accounts, tax refunds, all choses in action, insurance policies and refunds and all other property of every kind and nature owned by Assignor, or in which Assignor has an interest (the "Assignment Estate").

1.1    <u>Lease Exclusion</u>.  Leases and leasehold interests in real property are not included in the Assignment Estate; <u>provided</u>, that, if the Assignee determines that such excluded

1

lease or leasehold interest may be assigned and also that the same has realizable value for Assignor's creditors, then such excluded lease or leasehold interest shall be deemed to be included in the Assignment Estate and Assignor shall, upon demand of Assignee, assign and transfer such lease or leasehold interest to Assignee, or its nominee, for administration under the terms of this Assignment. Assignor hereby appoints Assignee as its attorney-in-fact for any and all matters concerning the termination of any real property leases.

   1.2  <u>Employee Benefit Plan Exclusion</u>. Employee benefit plans (which includes any related employee trust fund), including, without limitation, any ERISA-qualified plan or other similar employee plan, are not included in the Assignment Estate. Assignee shall not be or deemed to be an administrator under any such employee benefit plan nor shall Assignee have any role in, or responsibility for, the termination of any employee benefit plan of Assignor and/or its employees.

   1.3  <u>Beneficial Ownership Information Reporting</u>: Assignee shall have no responsibility for Financial Crimes Enforcement Network ("FinCEN") reporting and such reporting, if any, remains with the Assignor.

   2.  <u>Real Property Grant Deed</u>. This Assignment constitutes a grant deed to all real property owned by Assignor (except for real property leases and leasehold interests which are expressly excepted from the Assignment Estate as provided in Section 1.1 above), if any, whether or not the Assignor's real property is specifically described in this Assignment. Assignor hereby appoints Assignee as its attorney-in-fact for any and all matters concerning real property it owns and operates, including, but not limited to, marketing, sale, transfer or other disposition of its real property. Upon disposition of the real property, net proceeds, if any, shall immediately vest in the assignment estate as if it was personal property.

   3.  <u>Delivery of Documents, Endorsements and Mail Delivery</u>. Assignor agrees to deliver to Assignee all books of account and records of Assignee, to execute and deliver all additional necessary documents reasonably requested by Assignee, and to endorse all indicia of ownership as reasonably requested by Assignee, in order to complete the transfer of all assets to Assignee as intended by this Assignment, including, but not limited to, all of Assignor's real and personal property and/or Assignor's interest therein, including, mortgages, deeds of trust, motor vehicles, trademarks, copyrights and patent rights (but excluding real property leases and leasehold interests which are expressly excepted from the Assignment Estate as provided in Section 1.1 above). Neither Assignor, nor its agents, shall execute any documents on behalf of Assignor without prior written approval of Assignee. Assignee is hereby authorized to execute all endorsements and demands requiring Assignor's signature, in the name of Assignor, including endorsements on checks, bank accounts, deposit accounts, and stock certificates, payable to, or standing in the name of Assignor. Assignor further authorizes Assignee to apply for any deposits, refunds (including specifically, among others, claims for refund of taxes paid or unearned insurance premiums) or

claims wherever necessary, in the name of Assignor. Assignee is authorized to direct all Assignor's mail to be delivered to Assignee, and Assignee is expressly authorized and directed to open said mail as agent of Assignor, and to do anything or act which Assignee in its sole and arbitrary discretion deems necessary or advisable in any case to effectuate the purposes of this Assignment.

4. Nature of Assignment. This instrument transfers legal title and possession of all of Assignor's assets in the Assignment Estate; provided, that this Assignment constitutes a transfer of only those assets that can be transferred legally and does not constitute a transfer of property that it is illegal to transfer. Assignee, in its sole discretion, may determine whether to continue all or a part of the business operations of Assignor or to liquidate Assignor's assets.

5. Disposition of Assets. Assignee, in its discretion, may sell and dispose of Assignor's assets upon such terms and conditions as it may see fit, at public or private sale, or otherwise. Assignee shall not be personally liable in any manner in connection with the performance of its duties and obligations hereunder except in the event of its gross negligence, willful misconduct or violation of law. Assignee's obligations hereunder shall be in a representative capacity only as an Assignee for the general benefit of Assignor's creditors. Assignee shall administer this estate to the best of its ability and it is expressly understood that Assignee, and its agents, servants or employees, shall be liable only for reasonable care and diligence in the administration of the Assignment Estate. Assignee shall not be liable for any act or thing done by Assignee, its agents, servants, or employees in good faith in connection herewith. Assignee is not liable or responsible for any obligations of any nature whatsoever incurred at any time by Assignor, whether before or after the date of this Assignment. Assignee acknowledges and agrees that all of Assignee's actions in respect of Assignor's assets, property, rights and business shall be in furtherance of its duties as set forth herein.

6. Compensation of Assignee. From the proceeds of sales, collections, operations or other sources, Assignee shall pay itself and reimburse all of its charges and expenses, pursuant to that certain Compensation Agreement between the Assignor and the Assignee. Assignee shall also pay from the proceeds reasonable remuneration to its agents and, its attorneys and may pay a reasonable fee to Assignor's attorneys and other professionals for services related to the Assignment. Assignee may also pay from the proceeds resulting from the sale, disposition or other liquidation of Assignor's assets, the costs and expenses incurred by any creditor who may have levied an attachment or other lien on any assets of the Assignor.

7. Powers and Duties of Assignee. Assignee may compromise claims, complete or reject Assignor's executory contracts, and discharge, at its option, any liens on the assets covered by this Assignment and any indebtedness that, under law, is entitled to priority of payment. Assignee shall have the power to open bank accounts in the name of Assignee or its nominees and deposit assigned assets or proceeds thereof in such bank accounts and draw checks thereon, borrow money, hypothecate and pledge the assets, and to do all matters and things that Assignor could

have done prior to this Assignment. Assignee shall have the power to employ auctioneers, attorneys, accountants and any other additional personnel to whatever extent may be necessary to administer the Assignment Estate. Assignee will not be responsible to assist in the preparation and filing of any and all state, county, local or Federal tax returns as required as such responsibility will be maintained by Assignor and its shareholders. Any act or thing done by Assignee hereunder shall bind the Assignment Estate and Assignee only in its capacity as Assignee for the benefit of creditors. Assignee shall have the right to sue as the successor of Assignor or Assignee is hereby given the right and power to institute and prosecute legal proceedings in the name of Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions. Assignee is hereby authorized and has the right to defend all actions instituted against the Assignor and to appear on behalf of the Assignor in all proceedings (legal or otherwise) in which Assignor is a party. Assignor does hereby appoint Assignee as Assignor's attorney-in-fact, with full power to act for and in the place of Assignor in such actions or proceedings or in any other matters, including the right to verify, on behalf of Assignor, and with respect to all documents of any nature whatsoever, including all pleadings, which are part of any legal proceedings. Assignor does hereby grant to Assignee the right to act for, and in the place of, Assignor in any type of proceeding under title 11 of the United States Code, Sections 101 et seq. (the "Bankruptcy Code"), including the right to defend any petitions or actions filed against Assignor under the Bankruptcy Code.

8. <u>Quarterly Reporting by Assignee to All Creditors.</u> The Assignee shall provide reporting on cash receipts and disbursements on a quarterly basis within 30 days from the end of each fiscal quarter. The report will bullet point key activities of the Assignee but only to the extent it does not breach attorney client privilege or risk litigation strategy.

9. <u>Assignor's Duties as to Non-Assignable Tax or Other Refund Claims</u>. Assignor agrees, to the extent that any tax or other refund claim is not assignable, to make any and all claims for refund of taxes or any other money due from any governmental agency for tax refunds, or otherwise, and to forthwith upon receipt of any such refunds, pay them over to Assignee, and hereby empowers Assignee, as attorney-in-fact of Assignor, to make all claims for refunds which may be made by an attorney-in-fact.

10. <u>Distributions</u>. Assignee shall apply the net proceeds arising from or related to the liquidation of the Assignment Estate in the following priority as to amounts only and not time of distributions as follows:

> A. First, all reasonable costs and expenses incidental to the administration of the Assignment Estate, including the payment of the remuneration and fee to the Assignee as set forth above and the payment of attorneys for the Assignee, accountants to the Assignee, and any other professionals the Assignee deems necessary to properly administer the Assignment Estate.

  B. Second, to deduct all sums which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under law is entitled to priority of payment and to reimburse Assignee as to all costs advanced by the Assignee or any third party for the preservation of the Assignment Estate's assets, including the maintenance and insurance of said assets and the expenses of any operation.

  C. Third, all Federal taxes of any nature whatsoever owing as of the date of this Assignment, or such claim of any Federal governmental agency as defined under 31 U.S.C. §3713, including but not limited to, Federal withholding taxes, Federal unemployment taxes and any other Federal income, excise, property and employment taxes.[1]

  D. Fourth, all monies due employees of Assignor entitled to priority as defined under California Code of Civil Procedure §1204 and §1204.5 up to the statutory maximum.

  E. Fifth, all state, county and municipality taxes of any nature whatsoever owing as of the date of this Assignment, including but not limited to employment, property and income taxes.

  F. Sixth, with the exception of those classes set forth above, all distributions to other creditors shall be, within each class, pro rata in accordance with the terms of each creditor's indebtedness, until all such debts are paid in full. The Assignee may, but is not required to, make interim distributions whenever the Assignee has accumulated sufficient funds to enable it to make a reasonable distribution.

  G. Seventh, any monies unclaimed by creditors 90 days after the final distribution to unsecured creditors, if any, or the termination of the administration of the Assignment Estate by the Assignee, shall be re-distributed at the Assignee's reasonable discretion, pro rata, to all known unsecured creditors, being those creditors who cashed their respective dividend checks from the Assignment Estate.

  11. <u>Right to Withhold Payment of Contested Claims</u>. In the event that Assignee contests the validity of a Claim[2] falling within any of the classifications set forth in Section 9

---

[1] See paragraph 7 above; Assignee is not responsible for filing of Federal or state income tax and other tax returns.

[2] The term "Claim" for the purposes of this agreement shall mean a right to payment as defined in Section 101(5) of the Bankruptcy Code and the federal case law construing that statute.

above, the Assignee may withhold the pro rata distribution (whether interim or final) to which the holder of such contested Claim would otherwise be entitled to receive until the allowance of the contested claim is determined by a Court of competent jurisdiction or by agreement with the Assignee.

12. Definition of Transaction. It is agreed and understood that this Assignment is a general assignment for the benefit of all of Assignor's creditors; and that this is a "general assignment for the benefit of creditors," as set forth in, and defined in the California *Code of Civil Procedure, Section 493.010,* and all other laws of the State of California pertaining thereto. This general assignment for the benefit of creditors (a) does constitute an assignment to Assignee of all assets of Assignor which are transferable and not exempt from enforcement of a money judgment; (b) is an assignment for the benefit of all of the creditors of the Assignor; and (c) does not create a preference of one creditor or class of creditors over any other creditor or class of creditors.

13. Limitation of Liability. Assignor acknowledges that Assignee is acting solely as Assignee in connection with this Assignment and not in its personal capacity. As a result, Assignor expressly agrees that Assignee, its members, officers and agents shall not be subject to any personal liability whatsoever to any person in connection with the affairs of this Assignment, except for its own misconduct knowingly and intentionally committed in bad faith, by gross negligence or in violation of law. No provision of this Agreement shall be construed to relieve the Assignee from liability for its own misconduct knowingly and intentionally committed in bad faith, by gross negligence or violation of law except that:

    A. The Assignee shall not be required to perform any duties or obligations except for the performance of such duties and obligations as are specifically set forth in this Assignment, and no implied covenants or obligations shall be read into this Assignment against the Assignee. In the absence of bad faith on the part of the Assignee, the Assignee may conclusively rely, as to the truth, accuracy and completeness thereof, on the statements and certificates or opinions furnished to the Assignee by the Assignor and conforming to the requirements of this Assignment. The Assignee shall not be liable for any error of judgment made in good faith. The Assignee shall not be liable with respect to any action taken or omitted to be taken by it in accordance with a written opinion of legal counsel addressed to the Assignee.

    B. In connection with the foregoing, the Assignment Estate shall defend, indemnify and hold the Assignee and its past and present officers, members, managers, directors, employees, counsel, agents, attorneys, parent, subsidiaries, affiliates, successors and assigns, including without limitation MCA Financial Group, Ltd. (collectively, the "Assignment Estate

6

      Indemnified Persons") harmless from and against any and all Indemnified Claims (defined below); <u>provided</u>, <u>however</u>, that the Assignment Estate shall have no obligation hereunder to any Assignment Estate Indemnified Person with respect to any Indemnified Claims to the extent resulting from the willful misconduct, gross negligence or violation of law of any Assignment Estate Indemnified Person.

   C. The foregoing indemnification provisions shall survive any termination of this Assignment or the transactions contemplated hereby.

   D. For purposes hereof, "Indemnified Claims" means any and all claims, demands, actions, causes of action, judgments, obligations, liabilities, losses, damages and consequential damages, penalties, fines, costs, fees, expenses and disbursements (including without limitation, fees and expenses of attorneys and other professional consultants and experts in connection with investigation or defense) of every kind, known or unknown, existing or hereafter arising, foreseeable or unforeseeable, which may be imposed upon, threatened or asserted against, or incurred or paid by, any Assignment Estate Indemnified Person or Assignee Indemnified Person, as applicable, at any time and from time to time, because of, resulting from, in connection with, or arising out of this Assignment, the transactions contemplated hereby, including but not limited to economic loss, property damage, personal injury or death in connection with, or occurring on or in the vicinity of, any assets of the Assignment Estate through any cause whatsoever, any act performed or omitted to be performed under this Assignment, the transactions contemplated hereby, or any breach by Assignor or Assignee, as applicable, of any representation, warranty, covenant, agreement or condition contained herein.

  14. <u>Entire Agreement</u>. This Assignment supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof.

  15. <u>Headings</u>. The headings used in this Assignment have been inserted for convenience of reference only and do not define or limit the provisions hereof.

  16. <u>Invalid Provisions</u>. If any provision of this Assignment is held to be illegal, invalid or unenforceable under any present or future law, and if the rights or obligations of any party hereto under this Assignment will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Assignment will be construed and enforced as if such illegal, invalid

7

or unenforceable provision had never comprised a part hereof and (c) the remaining provisions of this Assignment will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

17. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the Laws of the State of California applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

18. <u>Counterparts</u>. This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

DATED January __8__, 2025 at _Orange County_, CA

Stewart Homes, Inc., a Delaware LLC, Assignor

By: _/s/ Amy Stewart_
Amy Stewart, as Trustee and on behalf of the Michael and Amy Stewart Family Trust dated December 6, 2020

Accepted by Assignee on 8th day of January, 2025 at Phoenix, AZ

MCA FinCo 4, LLC, an Arizona Limited Liability Company, Assignee

By: _Morris C. Aaron_
Morris Aaron
Its: Manager

8

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17701 Cowan, Suite 210, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. SECTION 303(J)(2); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MORRIS AARON ON BEHALF OF MCA FINANCIAL GROUP, INC., ATTACHED HERETO IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 8, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 8, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 8, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows: Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

THE REQUIREMENT OF LBR 5005-2(d) TO PROVIDE JUDGES COPIES IS SUSPENDED AT THIS TIME

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 8, 2025 | Danielle Cyrankowski | /s/ Danielle Cyrankowski |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

9

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **John P Schafer**     john@theschaferfirm.com, pttnaegely@gmail.com
- **Marc C Forsythe**     mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com
- **Mark D Hurwitz**     mhurwitz@lsl-la.com, dsmall@lsl-la.com,narutunyan@lsl-la.com
- **Charity J Manee**     cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **Matthew J Pero**     mpero@lagerlof.com, lhlista@lagerlof.com;mrapkine@lagerlof.com
- **Douglas A Plazak**     dplazak@rhlaw.com
- **Leo D Plotkin**     lplotkin@lsl-la.com, hpetrilli@lsl-la.com;dsmall@lsl-la.com
- **Michael Rapkine**     mrapkine@lagerlof.com, afrctecf@afrct.com
- **Amitkumar Sharma**     amit.sharma@aisinfo.com
- **Timothy J Silverman**     tsilverman@scheerlawgroup.com, tsilverman1@ecf.courtdrive.com
- **James E Till**     james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com
- **United States Trustee (SA)**     ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**     wwall@wall-law.com
- **Diane Weifenbach**     diane@attylsi.com, bankruptcy1@attylsi.com
- **Mandy Youngblood**     csbk@gmfinancial.com

**TO BE SERVED BY UNITED STATES MAIL**:

| | | |
|---|---|---|
| Bernie Hittner<br>Pacific Business Capital Corp.<br>245 Fischer Ave., Ste. # A-1<br>Costa Mesa, CA 92626 | Paul Reichart<br>8407 Run of The Knolls<br>San Diego, CA  92127-2545 | DJ Burke<br>Mobile Direct<br>4524 Peytonsville Rd.<br>Franklin, TN 37064 |
| Scott Redsun<br>Brykrist Devlopment Inc.<br>28562 OSO Parkway D-142<br>Rancho Santa Marg., CA 92688 | David Tofolo<br>9 Sierra Vista<br>Laguna Niguel,  CA 92677 | Frank Arlasky<br>Capital 360<br>33425 Spinnaker Drive N<br>Dana Point, CA  92629 |
| Mike Martinez<br>33881 Cabrillo Isle<br>Monarch Beach, CA 92629 | Laura Whitehead<br>54 Stoney Pt<br>Laguna Niguel, CA 92677-1001 | Paula Ansara-Wilhelm<br>33581 Marlinspike Drive<br>Dana Point, CA 92629-4426 |
| Bob Gino<br>33581 Marlinspike Drive<br>Dana Point, CA 92629-4426 | Bob Gino & Paula Wilhelm<br>33581 Marlinspike Drive<br>Dana Point, CA 92629-4426 | Alan Ansara<br>10701 Ring Ave.<br>Rancho Cucamonga, CA 91737 |
| Steven Waldon<br>23629 William Pl.<br>Murrieta, CA 92562 | Chris Schlereth<br>23802 Inverness Pl.<br>Laguna Niguel, CA 92677-1001 | John Sturdevant<br>PO Box 6981<br>Laguna Niguel, CA 92607 |
| Mark Leffler<br>18771 Silver Maple Way<br>Santa Ana, CA  92705 | Richard Niggeman<br>241 Avenida Serra<br>San Clemente,  CA 92672 | Craig Maki<br>30202 Sonrisa Ln.<br>Laguna Niguel, CA 92677-2358 |

| | | |
|---|---|---|
| Richard Raffa<br>3707 Via Zumaya Street<br>Corona, CA 92001 | Benard Eshel<br>379 22nd St.<br>Santa Monica, CA 90402-2507 | Myron Reichert<br>8407 Run of the Knls.<br>San Diego, CA  92127 |
| Micheal Grant<br>Michael Grant Capital Inc.<br>29911 Niguel Rd Unit 723B<br>Laguna Niguel,  CA 92607 | CALLAHAN & BLAINE, APLC<br>Michael J. Sachs<br>Scott D. Nelson<br>John D. Van Ackeren<br>3 Hutton Centre Dr., Ninth Floor<br>Santa Ana, California 92707 | |